Winter v. United States Counsel Morning, Counsel. Morning, Counsel. Morning, Counsel. Morning, Counsel. Morning, Counsel. Morning, Counsel. Morning. Counsel, proceed. Your Honor, I have told Ms. Johnson, who will be arguing the rebuttal, that I would leave her about 10 minutes. I promise to leave her 5. I'll do my best, and I will keep track. This is our second visit to this Court on behalf of Mr. Winter. Mr. Winter's claim arises out of a program in which he became involved back in Cleveland many years ago. It's a Federal tort claim. The issues about the injury that he claims to have suffered are not relevant here, so I won't go into them. We're here on a very limited issue. This case was dismissed once before by Judge Rosenblatt, came up here, and this Court overturned Judge Rosenblatt's decision and returned it to the District Court for a trial. On the merits and on an issue that was unresolved in the earlier appeal, and that was the question of whether the lawsuit had been filed within six months from the date of the final denial letter. The Federal Tort Claims Act has a number of limitation statutes in it that are different than the ordinary statute of limitations that an injured party faces when he suffers an injury as a result of harm performed by a tort feeser. Mr. Winter's statute of limitations began to run when he knew or should have known that he was injured as a result of somebody's negligence, and he filed a claim, and then he became involved in the Federal Tort Claims Statute, Federal Tort Claims Act statute scheme of procedures. He was first given a denial and then told he could request a reconsideration, which he did. The only issue before you now is whether he filed his lawsuit in July of 1997 within six months of the date of a final denial. There were two supposedly final denials in his case. The first one was in January of 1996. In January of 1996, the Veterans Administration sent a letter telling him that his case was his reconsideration was finally denied, and he had the right to file suit within six months. You were going to make this argument in about ten minutes. You used up two and a half. Okay. I think we know the facts. Okay. Why don't we get to the issues? We know it's in six months. All right. Tell us about, for instance, whether it's six months within certified mailing. All right. But mailing by certified or registered. Okay. The statute provides that the six-month notice has to be sent by certified or registered mail. There's no question. There was some question whether the initial 1996 letter had been sent properly, and that was tried below. And finally, a final argument, we conceded that apparently the letter had been mailed. The question, and probably it was mailed by certified mail, as the statute requires, certified or registered. You conceded that? Well, did you say you conceded it was mailed? We conceded it was mailed. And it's probably certified. What is that? We conceded it was mailed certified. We agreed that that's what the evidence all showed. But what was also undisputed was that it was never received by Mr. Winter. All right. What's the effect of that if it runs from six months from the date on which it was mailed? It runs from six months on which notice is given. The statute requires that notice has to be given. You know, when we talk about whether taking a letter to the mailbox or to the post office gives effective notice, it took me back to law school some 40 years ago when my procedure professor talked about something called the mailbox rule. And the mailbox rule that we've discussed in the brief is a rule that says that there's a presumption of notice when a letter is mailed. Okay. If we assume that the letter is mailed, then there's presumed that there's notice. However, that's a rebuttable presumption. And here at the trial of this case, there was nothing but evidence rebutting receipt by Mr. Winter. Mr. Winter's address of record with the Veterans Administration when the 96th letter was mailed was on Laurel. There are two street addresses that are important in this case, Laurel and Leland. He lived on Laurel when he was dealing with the Veterans Administration. He moved to Leland, but he left his mailing address at Laurel because his business took him out of town for extended periods. Actually, we know all this. The district court found that it was mailed to his Laurel address by certified mail after you conceded that. And then where are we? Where we are. District judge found that it was mailed by certified mail, and therefore the notice requirement of the statute was satisfied, right? But that's wrong. The notice statute. You're relying solely on a legal argument that receipt is required. I'm sorry? So are you relying solely on a legal argument that the statute requires that receipt be proven? That's the first thrust of our argument. We also say later that the defendant is stopped from asserting the statute of limitations and that they waive the statute of limitations by sending the January 1997. We're just on the first issue now. Correct. Your first argument. All right. And I understand your first argument to be is that the statute runs from the date of mailing, but only if there was actual notice given. And there's a presumption of actual notice when there's a mailing, but it can be rebutted. Is that the argument? That's exactly the argument, which we did. And we rebutted it. Not only did we rebut it, the government, when they found out that Mr. Winter claimed he didn't receive the letter. I think I want to just clarify something. What you wanted to rebut was not that there was actual mailing. What you wanted to rebut was that there was actual receipt. Yes. Okay. And we did. The government rebutted it. Notice doesn't constitute mailing. Mailing is a presumption, creates a presumption of notice, and it's also the date to start the statute. Correct. But only if actual notice is received. Correct. You know, I was gratified to hear the young attorney from the Justice Department arguing in a case about an hour ago that the plaintiff had not perfected service of process in that case because they couldn't prove that there were receipts received, that they were signed receipts, the certified letter receipts. I think that was the Ridenour case that was argued. That's the position that we are taking here. The government, when they found out that Mr. Winter claimed he did not receive the letter, they did an investigation. Not only did Mr. Winter not sign and the post office return the receipt, but the post office did an inspection and they found no proof that the letter ever made it to Mesa, Arizona. The statute of limitations, the six months begins to run when final notice is given, and it's different in a Federal Tort Claims Act case than it is, than the statute of limitations in an ordinary tort case. In an ordinary tort case, somebody runs a red light and hits me. I know I've been injured. I know there's a tort feeser. I know that there's two years in which to file suit. The Federal Tort Claims Act gives the discretion as to when to start the statute of limitations running to the government. The government gives its notice and that tells the injured party, okay, you have six months from now after which time you will be barred forever. So the government's in control. It cannot make – it doesn't make sense that simply putting it in the mail when it's required to be done by certified or registered mail is enough. They do it that way so they get the receipt back to prove that there has been notice given. Okay. So your argument all depends on your client having received actual notice and you concede that it was in September that he got actual notice. I thought that's what you did. He conceded that it was in September that he got actual notice at one point during his testimony in the trial court. It was a discussion with Mr. Bedell. Mr. Bedell didn't remember whether he told him that there had been a final letter notice sent in January of 1996. Well, I guess I want to know if this party is conceding that for purposes of the statute of limitations being satisfied that actual notice occurred in September 1996. I don't know. I'm not – Well, you're representing him. Yes, I'm representing him. And I believe that – I believe that it was equivocal because Mr. Winter said, okay, maybe I guess – But, I mean, what are you telling us now? If you say actual notice is the key, when are you saying actual notice happened? Actual notice happened in January of 1997. Uh-huh. When the final letter was sent, which didn't even refer – which didn't tell him that they had sent a final letter in 96. You'll look at the 1997 letter. It only says, we sent you a letter in 1996. It doesn't say it was a final letter. It doesn't say that you were barred then. The reason we concede notice in September of 96 only to reach the estoppel argument, which then flows from that issue. If you'll recall, when Mr. Winter was talking with Mr. Bedell in 1996, he told him – Mr. Winter told Mr. Bedell, I didn't receive any letter in 1996 telling me my case was closed. Mr. Bedell said, well, send us some medical records. So Mr. Bedell was leading Mr. Winter into believing – if, let's suppose, the September of 96 date is a date when time begins to run for Mr. Winter, because he has notice of the earlier mailing of the letter at that date, then the government's conduct becomes important. Then what it does, what Mr. Bedell does, send me some more information and we'll talk about your case, which Mr. Winter does. And Mr. Bedell then has the government embark upon its investigation as to whether they can prove that Mr. Winter got the letter in January of 1996, which they can't. And then they embark upon composing this carefully drafted January of 1997 letter, which says your case is now – your reconsideration is denied. You now have six months in which to file suit. And he files suit within the six months from the January 1997 letter. The Laurel address was a good address. Mr. Winter was not guilty of any misconduct. He kept that as an address and he had a careful way in which he could receive notice. Notice in the statute must mean actual notice because of the peculiar difference in this kind of situation, where it's the government that begins a time period running by the sending of its letter. The trial court in his decision based his failure to apply the equitable tolling argument that we made in our position below and here only on the fact that the trial court found that actual notice is not necessary. That can't be what the statute means. It says you give notice by certified mail. Why would it say certified mail unless it required return of the receipt to prove actual notice? Mr. Winter didn't get actual notice that his case had been declined until January of 1997, when the notice letter for which he signed a receipt, which receipt was returned to the government, was done. We submit that this case has to be overturned and sent back again to Judge Rosenblatt for a decision on the merits. I see I'm leaving Michelle almost seven minutes for rebuttal. If you have no more questions of me, I'll pass to Mr. Cole. Thank you. May it please the Court. This is a case about time limits governing Federal court litigation. All right. Let me ask you one question. Certainly. Let's assume that everybody agreed that the government mailed this letter by certified mail and it went to a post office in Maryland to be delivered. Then there was an anthrax occurrence at the post office and all the mail was destroyed. Would the statute run against the person who never received the letter, never received any notice? Yes, it would, Your Honor. All right. So all you have to do is mail it and you don't need actual notice. That issue was decided by this Court in the Bertie decision, and it expressly said exactly what you just said, Your Honor, and that is that the statute means what it says. All right, counsel. Then why did that letter in 1997 say, this is the final letter and you've got six months? Well, I was going to get to that issue later. But first, it's first.    I have to risk my life. I have to risk my life. That's the guts of his case. All right. I was just curious about your position on the first issue. There is only one issue. That notice is irrelevant. There is only one issue. Because if my opponent does not win on that issue, then he doesn't have any other issues. Because he presumes to look at such things as equitable tolling, equitable estoppel, waiver, but only if we get past this first question, because he can't do it otherwise. No. That's not so. I respectfully disagree. I know you do. You think I'm right, but go ahead. I'm sure you do. It's nice to have a lawyer who convinces cases right, even if not equitable. But the question is, you can waive, clearly, the government has the right to waive a statute of limitations. You could do it in court. You could not assert it. You could say we waive it. You could file a document that says the secretary waives the statute. We're willing to proceed in the case, right? You can't. I mean, waiver cannot be asserted against the government. I don't know what that means. I mean, once the government waives in court, they file a document, they say we waived, and then they come in a week later or a year later on appeal and say, you know, we made a mistake when we waived. The other side can say, but the government's waived. Right? Well, Your Honor, we're talking about laws setting limits for filing against the United States, which are strictly true. I know what we're talking about. Yes, I know all of those things. The United States government cannot waive those rights. Who can't waive it? The people who sent the ignorantly composed letter. Okay. That's another issue. The question is, the government as a government could waive the statute. I don't think waiver can be used against the government. I don't know how we would be able to. I don't know what it means that you can't use it against the government. You're going to tell all those people who do affirmative litigation for the government that when, you know, they get waivers from other people, that those don't count either. No, no. I think that is a different matter entirely. I see. What about affirmative misconduct by the government in this case, knowing that they thought the statute of limitations had run, but they leave this guy on, get him to get an attorney, get him to file suit within the six-month period? That's unconscionable, counsel. Your Honor, let me explain that. Yeah, I'd like to. And start explaining from April after the first meeting. Okay. Which was within the six-month period. That is correct. But there was a call by Mr. Winter to the local VA asking about possibilities for settlement in April. And he never asked, what is the status of my claim? And Mr. Bedell, the representative of the VA, said he just assumed that Mr. Winter knew about the situation. And as a result, there was no communication between the two of them about time limits. Now, in September, as Mr. Friedman has already indicated, Mr. Winter did learn that his claim had been denied right at that point. But at this point, his six months had already expired. The six months that he had from the date of mailing. Somebody told him his claim had been denied. That's right. But at that point, his allegation is he doesn't have anything in his hand telling him it's been denied. That's correct. Okay. He's just now got information that sometime your claim was denied. That it already had been denied. That's right. And I'm not sure whether there was a statement as to what date it was denied. But you would expect that someone, when told that, would say, well, when? You want to find out. What is important here? He may just be waiting for the letter. He might be. But in this case, the mailing had already occurred. He doesn't know. That's right. His allegation is, I don't know about this mailing. Right. And that was the same allegation in the Bertie decision. And what was said in the Bertie decision by this Court is as follows. 2401B designates the date of the certified mailing as the starting point for the six-month statutory period. Bertie would have this Court impose the additional requirement that the mailing result in actual notice to the claimant. We refrain from adopting Bertie's proposal. Now, that may seem inequitable. But that is the law of this circuit, and it's the law of every other circuit. In my view, it might be irrelevant also. The government in September says, well, send us your medical records. Right. Now, isn't that a suggestion that the claim is not dead, not closed? And then in January they say, well, we're denying it, but you now have six months. I know, Your Honor. And the explanation is ignorance, pure and simple ignorance on the part of the people who put together that letter. Can't we have a little confidence in our government, just a little bit? Your Honor? It's more than just ignorance. There was deceit going on here. They purposely refrained from telling him at various stages exactly what had happened. They made a decision, let's not be clear about what happened. They made a purposeful decision. Were you shaking your head no? Isn't that what they did? I have talked to the people, and I have said, what on earth were you thinking of? And they one person told me a couple days ago when I asked again, they said, just explain it as brain death. That was all. Because what they were doing. Somehow that's not in the record, counsel. Your Honor, what is important here is that when they made that statement, Mr. Winter's claim was dead. This was not a situation where the claim was still in existence. It was gone. So why did they say, this is now our final decision, and you've got six months. Now why did they say that? The reason I think is shown by comparing the two letters that are in the record here. The one from January of 96 with the one of 97. All they did was put in the same language as was in the first one. Sure. Which is the standard letter that they send out to everyone. It was not thought out. It was not carefully done. It was simply patching together a letter. Isn't there testimony in the record that they weren't sure and decided to make it a little bit ambiguous, but still to say they had six months? They said that they didn't know what the law was, and that was why they put it together as they did. And the important thing to us is that when they did that, they didn't have any right to open up what was then a dead case. And let me make this comparison, and that is with the rules governing this Court. District courts send out copies of their opinions to the litigants that have appeared before them. And those people have either 30 or, in the case of government cases, 60 days within which to respond. Now, in the same situation, if an individual party does not get notice from the district court, it is clear what the rule is. And this rule was changed back in 1991. Well, we allow the judgment to be withdrawn and a new judgment entered so they can start a new statute. We allow that. Well, Rule 4A.6 gives someone only 180 days within which to request a reopening of a case. If they don't act within that time, it is gone, regardless of their coming before the courts and saying, I never got a copy of the decision against me. Now, if that is the rule in the Federal courts, surely there cannot be a rule that allows an open-ended situation to exist in Federal agencies. Well, I would agree with that, but that's not really what happened here. I think it is, Your Honor. Well, let me ask you this. If the Secretary of the Department of Veteran Affairs, whoever that happens to be, had considered this problem and said, you know, we behaved in an unconscionable manner. We've lied to people. We're cheating people after injuring them. Now, this is not the way the United States government behaves. I want to give him another chance. I want to waive the statute. Could the Secretary have said, I waived the statute. Here, we're going to reconsider your claim? I don't actually believe he could, Your Honor. I don't think that he could take that action against the interests of the taxpayers. But he could do it in court the next day without sending that letter. He could just go to court and say, I waived the statute of limitations. I don't believe he could, Your Honor. He must assert a statute of limitations? I think once a case is no longer under consideration by his office that there is no jurisdiction. How about the Attorney General? Oh, I don't think so. Your Honor, what if government can't waive a statute of limitations? Let me give you this situation. Let us say that there's a change of administrations and there is a whole slew of cases that was decided one way, and the new administration says, hey, let's open up all those administrative decisions and we're going to redo them on our own hook. You can't do that. That is beyond the law. Are you sure about what the government does here? The government, when it's a defendant, and say, before it gets into court and it's negotiating a settlement with someone, and the person has to sue the government under the statute tomorrow, the government never enters into any agreement and says, you know, here's a waiver of the statute of limitations. Let's finish our settlement agreement. That doesn't happen? No. I mean, the plaintiff still has to have filed within the time period required. The Internal Revenue Service forever is granting waivers to extend things so that they can work out settlements. The IRS operates quite differently than the rest of the government does. And, by the way, there are – Well, if it's legal for the IRS to waive a statute of limitations against the government, then why isn't it legal for the VA to do it? Well, I misspoke, I think. What I was really meaning to indicate was that the law governing IRS appeals is different. In that instance, there is a requirement of receipt by parties. And if they don't, in fact, receive something from the – That's not what we're talking about. We're talking about they're not in court yet. Nobody sent a notice of filing suit or anything like that. We're not in court yet. They're just – you know, there's just a time limit for the IRS to bring suit. And there are negotiations going on. Negotiations going on. And the IRS doesn't want to bring suit. And so – well, that's – excuse me. I'm saying it the opposite way. They're having negotiations with the party who's going to sue the IRS. And the party has a specific deadline with which it must act. Can the – can the agency say you don't need to worry about that statute of limitations and not sue us? I don't believe that they can do that. And you think they don't? I don't think so. I think that there is a requirement that that date is absolutely set. A couple of more points. I don't want to – An investigation. One point I would like to raise is on the subject of the receipts. And that's something that I think has been mentioned here, that there was no – there was no mail receipt that came back to the government. And one thing I would like to note about that is that those receipts are not a necessary part of either certified or registered mail. That is something entirely separate. It is something that is paid for with an additional amount of money. The only thing that the sender of certified or registered mail knows absolutely is that it was sent. That is the thing that has been conceded here. Unless he makes an inquiry, he does not know whether it was received on the other end. And if he didn't buy the additional receipt, he will not get a receipt that indicates that. Sotomayor's receipt request and box that you checked. That's an additional $1.75, I believe, right now, Your Honor. What do you think the Irvin court meant when it said all the normal defenses apply of equitable estoppel, et cetera, and waiver? Oh, I think equitable estoppel. Equitable estoppel. Did it mention waiver, too? I don't think so. I think, I mean, my memory of that case is that that is strictly an equitable tolling case and that that is the limit of the Irvin, of the Irvin decision. But I think that it's also interesting to look at the facts of Irvin, because Irvin was dealing specifically with a statute that required receipt. Now, Irvin handled it one way. In this case, we're dealing with a statute that requires mailing. Congress must have meant to do something differently by having this different language here. Now, one thing I would like to mention about the Bertie decision. My opponent distinguishes Bertie from this case, and that's a tough thing to do, because they're so close. He says the difference is that Bertie had a notice actually being given before the six-month period was over. And in our case, we have notice occurring, actual notice occurring after the six months is over. In the Bertie case, indeed, notice was before. And what the Court said was the date is still the initial date of mailing, whether you receive that document or not. And that left them only a couple months. Now, if you buy my opponent's argument and you have an individual who inquires about the status of his appeal with the agency, if he appeals, if he calls and finds out that the decision has already come down and he finds this out one week before the end of his six-month period, he only has a week within which to file. But according to the corollary that Mr. Friedman suggests, if he calls a week after the end of the period has expired, it starts over again and he has a full six months. And when I said earlier that really that's what this case is about and it doesn't have anything to do with waiver or equitable estoppel or equitable tolling, this is what I meant. Because, first, you have to accept that you get that additional six months after you get a new letter or after you get actual notice before you can bring in these equitable tolling, equitable estoppel or waiver arguments, because otherwise this case was over at the end of six months after the sending by mail of that letter. We believe that however unfortunate this is for Mr. Winter, this is the law, it's the law of this circuit, it is the way things are done in the Federal courts, and this Court should, for that reason, affirm the decision by Judge Rosenblatt. Thank you. Thank you. Your Honors, your inquiry to my opponent hits the nail on the head, and that is that principles of fairness and equity apply even when litigating against the Federal government. This case is about what the defendants would like to do, and that is throwing the book at the plaintiff for not complying with the statute that states that he did not know. Let me ask, I just want to ask you something. If it was conceded already, the certified mail was sent, and it's the sending that controls, then everything that happens to extend the statute has to happen within that six months, isn't it true? Now, just assume for a second that you're not winning on actual notice controls. So just put that aside for a minute. Okay. So suppose a six-month period runs from the time they sent the certified mail. Then doesn't everything have to happen within the six months? It's difficult for me to put actual notice aside when the statute requires that a statute be extended. Can you waive a statute after the six months has run? Absolutely. Okay. And what do you got for that, for support? That after it's run, you could waive it. I mean, I'm willing to think you could waive it, you know, while you still have time and, you know, you can toll it while you still have time. But if you got anything that says you can actually waive it after it's gone? Well, understandably, we acknowledge that this is a case of first impression. These particular facts is a case of first impression. Well, you know you can waive it in court. If the government doesn't assert a statute in court, then it's waived. It's waived. The question is can you waive it outside of court? Well, if it can be waived within the statute, why can it not be waived without, given the conduct of the defendants? When the government, I know what's going to happen. The government comes in and it doesn't assert the statute of limitations. Then two months later it comes in and says, we made a boo-boo, but it's a jurisdictional defense and we can assert it at any time. Isn't that what they would say in this case? That's... Right. They'd say it's jurisdictional and we shouldn't have waived it. We should have asserted it. We didn't and now we assert it and it's jurisdictional and we're out of court. Right. I don't know that a court would agree that they are entitled to make that claim after it is waived. What if the court, the government comes in and says, remarkable as it may be, we want to have some fairness in this case. We affirmatively waive the statute and says that to the district court. District court rules against them. They go to the court of appeals and say, we made a mistake. We shouldn't have waived the statute. Would the court of appeals say you have no authority to waive the statute? No. No, I think the court of appeals would say you have the authority to waive the statute and you did. Yeah. The statute, they're requiring that the plaintiff complies strictly with the statute or that this court follows the precise lettering of the statute. Well, let me read to you the statute where it does say, well, I'll just draw your attention to this section B of that statute. It does not say that notice needs to be sent to the claimant, but isn't that the if notice is going to be sent, it must be sent to the claimant. That's not included in the statute, but that's, I think we would all agree that that's clearly the intent of the statute, as is actual notice. What is the point of sending notice? It says that we have a case of Birdie which says that we do not require actual notice. Birdie, actually, they received notice. This is different from that. And Birdie, they could fall back on the fact that counsel and the plaintiff received notice within the statute of limitations and failed to act upon it. In this case, we do not have anyone receiving actual notice at any point, not even within the statute of limitations. And then you have the defendants, which, by the way, I find it extremely hard to believe, and there's not even any testimony to support, that these attorneys who have a combined experience with the VA alone of 60 years just acted ignorantly. They purposefully acted vaguely. They purposefully were ambiguous. They did not communicate with the plaintiff in any clear matter for an entire year, and even when they attempted to, they were ambiguous and they told him he has another six months. So there is absolutely no support in the record that the defendants were ignorant of the facts of this case or of the law. And I'll point you to a memo from Mr. Bedell to Susan Ptacek, who is another attorney, who says, I requested that the new denial be noncommittal concerning whether Mr. Winter ever received the first one, and if not, whose fault it was. They understood at that point. But they failed to communicate that to the plaintiff for an entire year, did not act upon what they knew in January, and then at the very least in April of 1996, that the claim had been denied. But they would put on Mr. Winter, well, he should have asked them what's going on with the claim. Well, he should have done this. He should have been diligent. Where is the duty of these defendants who have had 60 years of experience with the matter? They never did that. Counsel, what's ambiguous about saying you've got six months? Nothing. Well, then I wouldn't say it was ambiguous if I were you. Your point is very well taken. The January 1997 letter is not ambiguous. It is that the 1997, the January 1997 letter includes on it, on the bottom, several initials of the various attorneys from the VA who saw the letter. This is not their standard form letter. This was a carefully crafted letter seen by these three attorneys. The first paragraph is new. The rest of it's identical, is the form. That's correct. But the first paragraph, again, is what was contemplated by the three attorneys who saw this letter before it went out. This is not their form letter, but for the remaining paragraphs. It is something that they testified that they carefully considered and drafted, and then they put at the bottom that these three attorneys signed it. Well, I'll tell you what Mr. Bedell called that last line where the three attorneys saw it. He called it the blame line. The blame line. We asked him if he thought that the plaintiff should accept blame for this letter, and he said no. We ask that you apply the principles of fairness and waiver and equitable estoppel to this case.
judges: B. Fletcher, Reinhardt, Restani